# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

CITY OF ST. PAUL v. H. LYTLE.[1]

June 16, 1897.

Nos. 10,521—(171).[2]

**City of St. Paul—Regulation of Pawnbrokers—Validity of Ordinance.**
Ordinance No. 1894 of the city of St. Paul is a valid exercise of the power granted by the city charter "to license and regulate pawnbrokers."

**Same.**
Even if the definition of "pawnbroker" contained in the first section is broader than the ordinary and proper meaning of the word, that fact would not invalidate the whole ordinance.

**Same—Enforcement—Complaint.**
It is not necessary that a complaint charging a person with engaging in and conducting the business of pawnbroker without a license should state the particular instances where money was loaned on pledge or pawn.

**Same—Sufficiency of Evidence.**
The evidence was sufficient to justify a finding that defendant was engaged in and conducting the business of a pawnbroker.

Appeal by defendant from a judgment of the municipal court of St. Paul, Orr, J., finding her guilty of a violation of the ordinance regulating the business of pawnbrokers. Affirmed.

*S. C. Olmstead,* for appellant.
The complaint did not state with sufficient precision the time

[1] Reported in 71 N. W. 703.          [2] See note on page iv, supra.
69 M.—1

when, or the name of any person to whom, any loan in violation of the ordinance had been made.    State v. Schmail, 25 Minn. 368. The alleged ordinance is void in so far as it attempts to establish any definition of a pawnbroker other than the commonly understood and accepted definition, for the power conferred by the charter upon the city does not extend to defining what shall constitute pawnbroking.    Mays v. City, 1 Oh. St. 268; Henback v. State, 53 Ala. 523.    The provisions conferring upon the mayor power to revoke any license issued under the ordinance are void. State v. Mayor, 34 Minn. 250.

*James E. Markham* and *Carl Taylor*, for respondent.

State v. Schmail, 25 Minn. 368, holds that it is necessary for the complaint to state definitely the amount of liquor and the person to whom it was sold, but it does not present an analogy with this case, because of the difference between the offenses as defined by the statutes determining them.    The fact that the ordinance defines the meaning of the word pawnbroker does not make it objectionable, if the definition is not broader than the general meaning of the word, and if the definition is broader, the language which attempts to extend the definition may be disregarded.    The various provisions of the ordinance are neither unreasonable nor oppressive, but are a proper exercise of the police power vested in the city to regulate and license pawnbrokers.    Citing City v. Bloom, 55 Minn. 97; City v. Braudy, 105 Mich. 670; Launder v. City, 111 Ill. 291.

MITCHELL, J.

Its charter confers upon the city of St. Paul authority "to license and regulate pawnbrokers."    Ordinance No. 1894, so far as here material, provides:

"Section 1. Any person or persons or corporation or firm who loans money on deposit or pledge of personal property or any valuable thing, or who deals in the purchasing of personal property or other valuable thing on condition of selling the same back again at a stipulated price, whether he does the same for himself or as an agent of some person or firm or corporation, or who by any means, method, or device loans money on personal property when the same is deposited for security or is deposited for any other purpose, is hereby defined and declared a pawnbroker for the purpose of this ordinance."

"Sec. 3. Any person pledging, pawning, or depositing an article for security shall have six months to redeem the same before the same becomes forfeitable."

"Sec. 5. And whenever the chief of police, or any member of the police force designated by the chief of police, shall notify any such dealer or dealers not to sell any property so received on deposit or purchased by them, or permit the same to be redeemed, such property shall not be sold or permitted to be redeemed until such time as may be determined by such chief of police, or member of the police force designated by the chief of police, so requiring them to be held; provided such time shall in no case exceed six months.

"Sec. 6. Every person who shall engage in the business of a pawnbroker, as in section 1 defined, shall, before engaging in such business, obtain from the city of St. Paul a license agreeable to the ordinance pertaining to licenses in said city of St. Paul. And the amount to be paid for said license shall be the sum of $200 per annum.

"Sec. 7. Before any person shall receive any license for such business as in section 1 defined, he shall file with the city comptroller a bond, with at least two sureties to be approved by said comptroller, in the sum of $5,000, conditioned that he will observe the ordinances of said city in relation to such business, and conduct his said business in conformity thereto, and that he will account for and deliver to any person legally entitled thereto any goods, wares, or merchandise, article, or thing which may 'come into his hands through his business as such pawnbroker, or in lieu thereof he will pay in money to such person or persons the reasonable value thereof.' "

"Sec. 11. Every pawnbroker   *   *   *   who shall violate or neglect or refuse to comply with any of the provisions of this ordinance shall for every such offense be punished by a fine of not less than $25 nor more than $100, or by imprisonment for not less than twenty days nor more than ninety days.   *   *   *   The mayor of the city of St. Paul may in his discretion revoke the license of any person licensed under this ordinance upon a conviction of a violation of any of the provisions of this ordinance in the municipal court."

The defendant, having been charged and found guilty of engaging in and conducting the business of pawnbroker in the city of St. Paul without obtaining a license as required by this ordinance, appealed to this court.

1. The first point made is that the complaint is insufficient because it does not state the times when, or the names of the persons to whom, any loan in violation of the ordinance had been made. This objection is based upon a misapprehension as to the

nature of the charge. The gravamen or gist of the charge is, engaging in and conducting the business of pawnbroker without a license, and not lending money on pawn or pledge to a particular person.

2. The second point is that the first section of the ordinance is invalid for the reason that it attempts to establish a definition of a "pawnbroker" different from the commonly understood and accepted definition of that word. It may be conceded that, under authority to license and regulate pawnbrokers, the city of St. Paul can acquire no power to license and regulate some other business by merely calling it the business of pawnbroker. We do not think, however, that the definition in the ordinance is necessarily any broader than the general and ordinary meaning of the word "pawnbroker," for every part of the definition contains the essential element of a loan of money on pawn or pledge deposited with the lender. But, even if the definition is broader than the ordinary meaning of the word, the ordinance would not be invalid. The attempted broader definition alone would be invalid.

3. We find nothing in the other quoted sections of the ordinance that is not a reasonable regulation of the business, and hence within the power granted to the city. There is certainly nothing which a court would be justified in holding unreasonable.

4. We are also of opinion that the evidence justified the trial court in finding that the defendant was conducting the business of pawnbroker. The evidence does not consist wholly, as counsel claims, of the two loans referred to in Exhibits 1 and 2. There was evidence of admissions of defendant, or her admitted general agent, that those loans were but samples of the kind of business which she was conducting, and that she was in the habit of lending money on watches, stocks, time checks, or any other kind of security, but that she thought she was not required to obtain a license, because she issued no tickets, but took notes and chattel mortgages from the borrowers. In the instances referred to it was admitted that the articles taken as security were deposited with her, and the transactions were none the less a loan of money on pawn or pledge because she took a chattel mortgage on the article deposited.

Judgment affirmed.